Aug. 10, }
   1876. }                    GOLDING'S  PETITION.

*Judicial office—Infant.*

An infant cannot execute the office of a judge.
Offices, where judgment, discretion, and experience are essentially necessary to the proper discharge of the duties they impose, cannot be executed by an infant.
The office of justice of the peace is a judicial office.

ROCKINGHAM COUNTY.

PETITION, for a writ of *habeas corpus*, presented to SMITH, J., August 3, 1876.   The hearing thereon was adjourned into court to August 10. The facts sufficiently appear in the opinion of the court.

*Mr. Lewis G. Hoyt* submitted the following argument in writing in opposition to granting the writ.

Justices of the peace were first instituted by the Statute 1 E. 3, cap. 16, which provides in the following words: " That for the better keeping and maintenance of the peace, the king willeth that in every county good men and lawful, which be no maintainers of evil or barrators in the county, shall be assigned to keep the peace; " and by Statute 4 E. 3, cap. 2, it is further enacted, " That there shall be assigned good and lawful men in every county to keep the peace," &c.; and by 18 E. 3, cap. 2, " That two or three of the best reputation in the counties shall be assigned keepers of the peace by the king's commission," &c. By Statute 2 H. 5, stat. 2, cap. 1, it is enacted, " That justices of the peace shall be made in counties of England of most sufficient persons dwelling in same counties, by the advice of the chancellor and of the king's council," &c. Previous to this no qualification save that of being " good and lawful men " and of the " best reputation " was required; but by Statute 18 H. 6, cap. 11, it is enacted, " That no justice of peace within the realm of England, in any county, shall be assigned or deputed, if he have not lands or tenements to the value of £20 per annum, except in cities," &c.; and now, by 18 Geo. 2, c. 20, it is enacted, " That no person shall be capable of being a justice of the peace * * who shall not have an estate of freehold * * to the value of £100." In England it seems that minority is no disqualification for a justice of the peace, and I understand that there are to-day a great many justices in that country who are minors. By the ancient common law, the great qualification for civil officers was, that they " ought to be honest, legal, and sage; " and in 5 Co. 27, it was decided that " the acts of a mayor and commonalty shall not be avoided by reason of the nonage of the mayor."

In New Hampshire we can find no reason why minors should not lawfully act as justices of the peace. Article 26 of the constitution says that " all judicial officers * * shall be nominated and appointed by the governor and council; " article 75, that they shall continue in office for five years; article 77, that they shall have jurisdiction in civil causes. As we can find no statute regulating the appointment of justices of the peace, we presume that the governor and council derive their power of appointing, and the legislature their power of legislating, from the above articles, wherein is contained nothing conflicting with the common law.

By article 11, " Every inhabitant of the state, having proper qualifications, has equal right to elect and be elected to office." These qualifications are determined by subsequent articles and statutes; but in case of justices of the peace the constitution wisely leaves the power of appointment to the governor and council, who are to determine the qualifications of such officers by the criterion of " ability and character," rather than that of " age."

I have not looked for precedents, but have in my mind the case of a

son of a late chief-justice of this state, who was appointed before his majority, although he did not act on his commission during his minority; but I presume that if his commission was void when granted, it did not become lawful by his coming of age. That it is not intended that a justice shall be of the age of twenty-one years, one would infer from the fact that where age is intended as a qualification it is expressly so declared—as, for instance, a lawful practitioner " shall be a citizen, and of the age of twenty-one years."

*Towle*, upon the same side, was heard orally.

*Marston* and *Wood*, for the petitioner.

SMITH, J. The petitioner, Thomas Golding, complains that he is unlawfully restrained of his personal liberty by Samuel W. Leavitt, keeper of the jail at Exeter, in this county. It appears by the return of the keeper of the jail, that, June 3, 1876, a complaint was presented to Lewis G. Hoyt, a justice of the peace for said county, by James Watkins, charging that the petitioner had threatened to do him bodily harm; that he feared the petitioner would do him some bodily hurt; and praying that he might be ordered to give sureties to keep the peace, &c. A warrant was issued upon said complaint, upon which the petitioner was arrested and brought before William A. Shackford, a justice of the peace for said county, and on June 24, 1876, was ordered to recognize in the sum of $100, with two sufficient sureties, to be of good behavior for one year, and to pay costs of prosecution taxed at $8.57, and stand committed till said order should be complied with. Golding having neglected to perform said order, a mittimus was issued by said Shackford, July 17, 1876, by virtue of which he was committed to the jail in Exeter by C. D. Towle, a deputy sheriff, August 2, 1876.

It appears by the evidence introduced, upon the hearing of this petition, that Lewis G. Hoyt, the magistrate before whom said Watkins made his complaint on oath, was born on February 23, 1856, and is therefore still an infant, under the age of twenty-one years. The question presented is, whether an infant can hold the office and exercise the duties of a justice of the peace, or, in other words, whether the proceedings against Golding are invalid because the complaint against him was sworn out before a justice of the peace who was an infant.

In *Moore* v. *Graves*, 3 N. H. 408, in an opinion by RICHARDSON, C. J., the subject what offices an infant may and what he may not hold was fully considered, and the numerous authorities on the subject collected by him. It is there said, that it has always been held that an infant cannot execute the office of a judge. The authorities cited are *Scambler* v. *Waters*, Croke Eliz. 636; Coke Litt., 3 b. and note 15; T. Jones 127; 2 Lev. 245. The learned chief-justice, upon a thorough examination of the adjudged cases, held that " offices where judgment and discretion and experience are essentially necessary to the proper discharge of the duties they impose, are not to be intrusted in the hands

of infants. But they may hold offices which are merely ministerial, and which require nothing more than skill and diligence,"—p. 412.

There is no ground for questioning the law as thus stated. The rule is founded in the soundest principles governing the administration of justice, and is for the benefit and safety alike of the public and of the individual—*pro commodo regis et populi.* Coke Litt., 3 b. The grant of such an office " to a man that is unexpert " is merely void.—*Ib.* The administration of an oath is a ministerial act, but the office of a justice of the peace is a judicial office, and, being such, cannot be held by an infant.

The defect is one not apparent on the papers, and hence may be shown by extrinsic evidence. It follows that the petitioner was tried upon an illegal complaint. He is therefore entitled to be discharged from arrest.

CUSHING, C. J. The authorities cited by my brother SMITH fully sustain the position that an *infant* cannot hold or execute the office of a justice of the peace, though I think it would hardly be necessary to cite an authority for the doctrine.

Being in the eye of the law *infans, i. e.*, speechless, or, in other words, unable to speak for himself in ordinary matters of contract, unable in the eye of the law to exercise sufficient judgment to bind his property by the purchase of a penny-whistle, or by a promissory note for any sum however small, the idea that the same law would permit him to exercise judicially power over the liberty, the persons, and the property of his fellow-citizens, is simply absurd.

I fully agree with my brother SMITH in the conclusions which he has reached.

LADD, J., concurred.

*Petitioner discharged from arrest.*