Request of Governor and Council
No. 88-468

OPINION OF THE JUSTICES

February 10, 1989

*To His Excellency the Governor and the Honorable Council:*

The undersigned justices of the supreme court return the following reply to the questions presented in your resolution adopted December 7, 1988, and filed in this court on December 9, 1988. Interested parties were permitted to file memoranda with the court by December 30, 1988.

 Question 1 concerns RSA 455-A:2 (Supp. 1988), which provides, in pertinent part: "Any person applying to be a justice of the peace shall indicate on the application whether he or she has been a registered voter in this state for at least 3 years immediately preceding the date of application." If this language may reasonably be construed to have some purpose, it must be read in that light. *Kalloch v. Board of Trustees*, 116 N.H. 443, 445, 362 A.2d 201, 203 (1976). We assume that the legislature intended to create something beyond a non-binding disclosure requirement. *See Trustees &c. Academy v. Exeter*, 92 N.H. 473, 482, 33 A.2d 665, 671 (1943). The legislature must have intended the statute to pose an absolute bar. The answer to question 1 is in the affirmative.

We turn now to question 2, which asks whether RSA 455:2 or RSA 455-A:2 facially violates the equal protection mandates of the New Hampshire Constitution and the fourteenth amendment to the United States Constitution. In the absence of allegations regarding overbreadth, see *New York v. Ferber*, 458 U.S. 747, 767–69 (1982), or vagueness, see *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497 (1982), we limit the scope of our response and do not consider whether the statutes are unconstitutional on their face. *See Opinion of the Justices*, 101 N.H. 518, 522–23, 131 A.2d 818, 821 (1957) (court declined to speculate regarding unspecified constitutional violations). We therefore must confine ourselves to considering whether the provisions which bar New Hampshire residents "who have indicated that they have not been registered to vote for the prescribed period" from becoming notaries public or justices of the peace violate equal protection mandates. We first examine RSA 455:2, regarding notaries public, and will then examine RSA 455-A:2, regarding justices of the peace.

■ RSA 455:2 (Supp. 1988) requires that "[a]ny person applying to be a notary public shall have been a registered voter in this state for at least 3 years immediately preceding the date of application." The class excluded, eligible State voters who "have not been registered to vote for the prescribed period," encompasses individuals under the age of twenty-one, recent residents of the State, and long-time residents who in the past chose not to register. No members of this class are within a category requiring strict or heightened scrutiny under federal law. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440–42 (1985); *Graham v. Richardson*, 403 U.S. 365, 371–72 (1971). Therefore, our only inquiry under the equal protection clause of the Federal Constitution is whether the statute is "rationally related to a legitimate state interest." *Cleburne, supra* at 440; *see Turner v. Fouche*, 396 U.S. 346, 362 (1970). The test is the same under the State Constitution. *State v. Amyot*, 119 N.H. 671, 673, 407 A.2d 812, 813 (1979) (quoting *State v. Hadley*, 115 N.H. 541, 543, 345 A.2d 160, 161 (1975)). We will therefore dispense with our usual independent analyses, *see State v. Ball*, 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983), and will examine the statutes under both constitutions together. The rational basis test requires that statutory restrictions "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *State v. Callaghan*, 125 N.H. 449, 451, 480 A.2d 209, 210–11 (1984) (quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

■■ Notaries public in New Hampshire take depositions, acknowledge deeds and other instruments, and administer oaths. RSA 455:3 (Supp. 1988). They may also issue writs of summons for witnesses to appear to give depositions. RSA 516:4. These limited duties are "essentially clerical and ministerial." *Bernal v. Fainter*, 467 U.S. 216, 225 (1984); *compare* RSA 455:3 *with* TEX. REV. CIV. STAT. ANN., Art. 5954 (Vernon Supp. 1984) (repealed 1987). Although a stated object of RSA 455:2 (Supp. 1988) is to ensure public familiarity with the officeholders, N.H.S. JOUR. 340 (1988), we cannot state that requiring registration as a voter for three years will achieve this end. The difference between those individuals who have been registered to vote in New Hampshire for three years and those who have not does not bear a "substantial relation" to any legitimate legislative goal. Given the limited duties of notaries public, the discrimination created by RSA 455:2 (Supp. 1988) fails the rational basis test and in our opinion violates both the Federal and State Constitutions.

Question 2 also asks whether RSA 455-A:2 (Supp. 1988), regarding justices of the peace, facially violates the equal protection mandates of the State and Federal Constitutions. As we noted, *supra*, we only respond here to the requirement in RSA 455-A:2 (Supp. 1988) that the governor and council reject New Hampshire residents "who have indicated that they have not been registered to vote for the prescribed period."

Justices of the peace in New Hampshire have "the power to administer oaths, perform marriage ceremonies, acknowledge instruments, and any other power prescribed by law." RSA 455-A:3 (Supp. 1988). The "other power[s]" of justices of the peace, who, unlike notaries public, are recognized by the State Constitution, N.H. CONST. pt. II, arts. 75, 79, 93, 94, include the ability to replace municipal or district court judges in certain circumstances. RSA 502:6, 502-A:5. Justices of the peace have the power to issue arrest warrants. RSA 592-A:5, :8. They also have more extensive power than notaries public to issue writs of summons to witnesses. *Compare* RSA 516:3 *with* RSA 516:4. Legislation enacted in 1986 gave justices of the peace jurisdiction to examine complaints seeking involuntary admission to, or revocation of conditional discharge from, mental health facilities, and to order compulsory mental examinations. RSA 135-C:28, II, :51, II (Supp. 1988). Justices of the peace also serve as bail commissioners, RSA 597:15, 16, and may order the proprietors of common lands to hold their annual meeting, RSA 303:17.

■ These powers conform to the general characterization of justices of the peace as "judicial officer[s] of inferior rank." 51 C.J.S. *Justices of the Peace* § 1 (1967); *see Golding's Petition,* 57 N.H. 146, 149 (1876). Their judicial powers justify increased State interest in the qualifications of individuals chosen for the office.

■ The heightened interest reflected in the three-year registration requirement reflects two demands that can reasonably be made of those seeking appointments to elementary judicial office. The State may legitimately confine such appointments to those with a modicum of knowledge about the structure of government and the limits of governmental power reflected in the institutional relationships between justices of the peace and those who are likely to invoke their jurisdiction. It is reasonable to suppose that those who have been at least minimally involved in the civic process, reflected in registered voter status for three years, are more likely to possess the requisite knowledge than those who have not been. While voter registration of the minimum duration is no guarantee of practical sophistication in the law relevant to the duties of a justice of the peace, it is a reasonable indication of that degree of interest in the working of government, without which such knowledge is unlikely. This indication of interest, moreover, verges on the second quality that the State can reasonably demand of a judicial officer of any rank: a strong sense of responsibility to the whole body of the people whom government is established to serve. This sense of responsibility guards against abuse of the judicial power. Because it should go without saying that a person lacking even the sense of duty to participate in the electoral process is less likely than others to feel the obligation of civic responsibility requisite for judicial service, a requirement to demonstrate that sense of duty for three years bears a reasonable relationship to the State's legitimate demand. The rational relationship between the criteria of judicial suitability that we have discussed and the three-year registration requirement imposed by the statute calls for the conclusion that RSA 455-A:2 (Supp. 1988) as applied to New Hampshire residents is consistent with the requirement of equal protection.

We therefore answer question 1 in the affirmative. Our response to question 2 is that RSA 455:2 (Supp. 1988) violates State and federal equal protection mandates but that RSA 455-A:2 (Supp. 1988) does not. We caution that we have examined these provisions only with respect to their effect upon State residents "who have indicated that they have not been registered to vote for the

prescribed period." We express no opinion on the constitutionality of these provisions in regard to other possible challenges.

> DAVID A. BROCK
> WILLIAM F. BATCHELDER
> DAVID H. SOUTER
> WILLIAM R. JOHNSON
> W. STEPHEN THAYER, III

February 10, 1989

*Alexander S. Buchanan,* Esq., filed a memorandum in support of an affirmative answer to question 2 as it relates to both notaries public and justices of the peace.

*Stephen E. Merrill,* attorney general (*Monica A. Ciolfi,* assistant attorney general, on the memorandum), filed a memorandum in support of an affirmative answer to question 2 as it relates to notaries public and a negative answer as it relates to justices of the peace.