Chamblin v. Northwood, NH, et al     CV-93-210-SD  05/08/95
UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


John Chamblin

    v.                                            Civil No. 93-210-SD

Town of Northwood, New Hampshire;
Town of Epsom, New Hampshire;
John E. Allen, Ed Bryant, Jr., and
Louis St. Pierre, individually and each
 in his official capacity as Police
 Commissioner for the Town of Northwood,
 New Hampshire;
Marlyn R.P. Flanders, individually
 and in her official capacity as
 an employee of the Town of Northwood,
 New Hampshire;
G. Fred Jacobs, individually and in his
 official capacity as Chief of Police
 for the Town of Northwood, New Hampshire;
Anthony Soltani, individually and in his
 official capacity as Police Officer for the
 Town of Northwood, New Hampshire;
Craig Maloney, individually and in his
 official capacity as Police Officer for the
 Town of Epsom, New Hampshire


O R D E R


    This civil action arises out of the arrest of plaintiff John

Chamblin conducted by Officer Tony Soltani of the Northwood

Police Department and Officer Craig Maloney of the Epsom Police

Department on April 20, 1990, in Northwood, New Hampshire.

    Chamblin asserts a host of legal claims founded upon both

federal and state law,[1] involving, inter alia, violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff seeks additional recovery pursuant to 42 U.S.C. §§ 1983 and 1985. Said claims have been asserted against both the Town of Northwood and the Town of Epsom, as well as various named town officers and employees in both their individual and official capacities.[2]

Presently before the court is defendants' November 1, 1994, motion for summary judgment, to which, as of the date of this

---

[1]With respect to defendants Soltani and Maloney, Chamblin alleges the following claims based on state common and constitutional law: (1) Assault (Count I); (2) Intentional Infliction of Emotional Distress (Count II); (3) Negligent Infliction of Emotional Distress (Count III); (4) False Arrest and False Imprisonment (Count IV); (5) Malicious Prosecution and Abuse of Process (Count V); (6) Conspiracy (Count VI); and (7) violation of various civil rights protected by the laws and constitution of the State of New Hampshire (Count VII). Defendant Flanders is likewise alleged in Count IV to have contributed to plaintiff's false arrest and imprisonment. Chamblin further alleges liability on the part of the Town of Northwood, Northwood Police Commissioners Allen, Bryant, and St. Pierre, and Northwood Police Chief Jacobs based on theories of (1) failure to train, supervise, and control Northwood police officers (Count VIII) and (2) respondeat superior (Count IX). Identical theories are alleged against the Town of Epsom regarding the conduct of Epsom police officers (Counts X and XI). In Count XII, Chamblin asserts violations of both federal and state civil rights legislation against defendant Jacobs on account of his involvement with plaintiff's proceedings before the Immigration and Naturalization Service.

[2]Epsom Police Chief Cameron Harbison, originally included as a named defendant in Counts X and XI, was granted a voluntary nonsuit by plaintiff on June 4, 1993.

2

order, no objection has been filed.[3]

## Background

While on duty in the early evening of April 20, 1990, Officer Tony Soltani received information from an Old Turnpike Road, Northwood, New Hampshire, resident that John Chamblin was seen operating an off-highway recreational vehicle (OHRV) on said thoroughfare in a reckless and unsafe manner.[4] Further investigation by Soltani revealed that three other Old Turnpike Road residents had likewise observed Chamblin operating the OHRV in said manner both on that day and on the previous day. Knowing that Chamblin had been deemed a "habitual offender" by the New Hampshire Department of Safety and that operating a vehicle after such a determination constituted an actionable felony under the laws of New Hampshire, Soltani sought and obtained a warrant[5] for Chamblin's arrest on those grounds.

At approximately 11:15 p.m. on that same night, Soltani

---

[3]The court notes that although Chamblin was represented by counsel at the initiation of this lawsuit, said counsel filed a motion to withdraw which this court granted on November 1, 1994. Chamblin subsequently entered an appearance pro se on January 9, 1995.

[4]According to the evidence before the court, it appears that Chamblin is also an Old Turnpike Road resident.

[5]The particulars of the process employed by Soltani in acquiring the arrest warrant are discussed <u>infra</u> at pp. 9-10.

3

stopped William Boisvert on Route 107 in Northwood for traveling in excess of the posted speed limit. During the course of obtaining Boisvert's license and registration, Soltani recognized Chamblin, asleep in the back seat, as one of Boisvert's passengers. Soltani then returned to his police cruiser to request back-up before executing the arrest warrant.

Officer Craig Maloney, of the Epsom Police Department, responded to Soltani's request for back-up. Both officers then approached the vehicle. Chamblin initially refused Soltani's request to exit the vehicle, but relented on the condition that he be shown a copy of the arrest warrant. As the two officers and Chamblin were making their way back to Soltani's police cruiser, where the warrant was located, a scuffle ensued between Maloney and Chamblin. With Soltani's assistance, Maloney subdued and ultimately handcuffed Chamblin, who was then placed in Soltani's cruiser and transported to Rockingham County Jail. After being charged, Chamblin was released on bail.[6]

Subsequently, Chamblin complained, without result, about alleged abusive conduct on the part of Officers Soltani and

_____

[6]In addition to the habitual offender charge, which formed the predicate for the arrest warrant, Chamblin was also charged with resisting arrest and assault. All of the underlying charges were eventually dismissed by the Rockingham County Superior Court based on the State's failure to provide Chamblin with a speedy trial.

4

Maloney in effecting his arrest, first to Northwood Police Chief Fred Jacobs, then to the Town of Northwood Police Commissioners, then to the New Hampshire State Police, and finally to the Federal Bureau of Investigation (FBI).[7]

## Discussion

### 1.  Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  Although

_____

[7]The FBI referred the case to the United States Department of Justice Civil Rights Division.  After "a careful review of the investigative reports in this matter, and based upon the information currently available to [the Justice] Department," the Civil Rights Division "concluded that this matter should be closed and that no further action is warranted."  Letter of John R. Dunne to Officer Tony Soltani dated October 1, 1991 (attached to Defendants' Motion for Summary Judgment as Exhibit I); Letter of John R. Dunne to Officer Craig Maloney dated October 1, 1991 (attached to Defendants' Motion for Summary Judgment as Exhibit H).

"motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); Maldonado-Denis, supra, 23 F.3d at 581.

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists.  Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), petition for cert. filed, 63 U.S.L.W. 3736 (U.S. Apr. 4, 1995) (No. 94-1630).

> When a party fails to make a showing
> sufficient to establish the existence of an
> element essential to that party's case, and
> on which that party bears the burden of proof
> at trial, there can no longer be a genuine
> issue as to any material fact: the failure of
> proof as to an essential element necessarily
> renders all other facts immaterial, and the
> moving party is entitled to judgment as a
> matter of law.

6

Smith, supra, 40 F.3d at 12 (citing Celotex, supra, 477 U.S. at 322-23; Woods, supra, 30 F.3d at 259).

Conversely, when a trialworthy issue is raised, summary judgment is inappropriate. However, "[t]rialworthiness necessitates 'more than simply show[ing] that there is some metaphysical doubt as to the material facts.'" National Amusements, supra, 43 F.3d at 735 (quoting Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (alteration in National Amusements). Thus, "'[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations . . . rank speculation . . . [or] improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoa v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)).

2. Marlyn Flanders

In Count IV of his complaint, plaintiff alleges that defendant Flanders "failed to properly follow the statutory provisions for arrest warrants before signing in her capacity as a Justice of the Peace. The issuance of a purported arrest warrant contributed to the false arrest of the Plaintiff." Complaint ¶ 60.

a. False Arrest

"Justices of the peace in New Hampshire . . . have the power to issue arrest warrants." Opinion of the Justices, 131 N.H. 443, 447, 554 A.2d 466, 468 (1989) (citing New Hampshire Revised Statutes Annotated (RSA) 592-A:5, :8). The investiture of such power "conform[s] to the general characterization of justices of the peace as 'judicial officer[s] of inferior rank.'" Id., 131 N.H. at 448, 554 A.2d at 468-69 (quoting 51 C.J.S. JUSTICES OF THE PEACE § 1 (1967)); see also Golding's Petition, 57 N.H. 146, 149 (1876) ("the office of a justice of the peace is a judicial office").

"Because the fourth amendment to the federal Constitution requires that no arrest warrants issue but upon probable cause, the issuing justice must be satisfied that there is 'probable cause' to believe that the person to whom the warrant is directed committed a crime." 1 RICHARD B. MCNAMARA, NEW HAMPSHIRE PRACTICE:

8

CRIMINAL PRACTICE AND PROCEDURE § 186, at 142-43 (1991) [hereinafter

MCNAMARA]. "Probable cause to arrest is said to exist when the

facts and circumstances within the officer's knowledge and of

which he has reasonably trustworthy information are sufficient in

themselves to warrant a man of reasonable caution in the belief

that an offense has been committed." MCNAMARA, supra, § 186, at

143; see also id. § 183, at 140-41 ("an arrest warrant can only

be issued after a neutral and detached magistrate has examined a

complaint and determined that the constitutional requirement of

probable cause has been met . . . .").

During her deposition, Flanders was questioned by

plaintiff's then-counsel regarding her issuance of the warrant as

follows:

> Q. And what should you be looking for [in an arrest warrant]?
> A. Make sure there's enough evidence. Read the affidavit, ask the questions, make them swear to it, that the evidence that they have is to the best of their knowledge and belief, the truth.
> Q. What level of evidence are you looking for that they must present?
> A. I mostly read the affidavit. That's what I usually do. Then I always ask the police officer to raise his right hand, and swear to the best knowledge of his belief, the statements that he is presenting is the truth.
> . . . .
> Q. (By Mr. Evans) What did you understand probable cause to mean?
> A. That he [Officer Soltani] had enough evidence to arrest the person for the

9

> conditions that are stated right here.
>
> Q. What did you base that on, ma'am?
>
> A. I based it on the simple fact that every one of these people were swearing and stated to him this is what they saw and this is what they believe that they did see. According to this, it appeared to me, that they were telling Mr. Soltani this is what they saw, and they were making a complaint too.
>
> Q. Also it indicates that you had examined the complaint against the defendant, Mr. Chamblin. Do you recall a complaint ever being presented to you?
>
> . . . .
>
> A. Well, the complaint had something to do with this -- something to do with an OHRV, or whatever they call it. It's very hard for me to remember back that far. I remember doing what I did, but I just can't tell you exactly. I remember Mr. Soltani saying to me that there was somebody that was speeding, or something. I really don't -- word for word I couldn't tell you.

Deposition of Marlyn R.P. Flanders at 8, 14-15 (attached to Defendants' Motion for Summary Judgment as Exhibit 7).

The court finds and rules that Flanders was duty authorized by the laws of New Hampshire to issue a warrant for the arrest of John Chamblin. The court further finds and rules that Flanders satisfied the statutory requirements pertaining to arrest warrants, including a finding that the constitutional prerequisite of probable cause had been met. Defendants' motion for summary judgment on the issue of false arrest (Count IV) is accordingly granted as to Marlyn Flanders.

10

b.  Section 1983 Claims

Since as early as 1872, it has been recognized as "'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Stump v. Sparkman, 435 U.S. 349, 355 (1978) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872)) (alteration in Stump).  The fact that some of plaintiff's allegations are founded upon 42 U.S.C. § 1983 does no violence to this well-established principle of "immunity of judges for acts within the judicial role . . . ." Pierson v. Ray, 386 U.S. 547, 554 (1967).

Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump, supra, 435 U.S. at 356-57 (quoting Bradley, supra, 80 U.S. (13 Wall.) at 351) (footnote omitted). The signing of an arrest warrant does not constitute an instance wherein a judicial officer would be divested of her immunity from civil suit.  See, e.g., Brewer v. Blackwell, 692 F.2d 387, 393 n.8 (5th Cir. 1982) ("[s]igning the [arrest] warrant was a

11

judicial act for which [the justice of the peace] is protected by absolute immunity even if [he or she] knew the affidavit to be false and acted maliciously in signing the warrant"); Heimbach v. Lyons, 597 F.2d 344, 347 (2d Cir. 1979) ("while [the justice of the peace] may have acted maliciously in signing a criminal arrest warrant . . . the justice is nonetheless immune from suit for damages for his actions").

The court finds and rules that the signing of the arrest warrant was a judicial act for which Flanders is entitled to absolute judicial immunity. Accordingly, summary judgment must be and herewith is granted in favor of Flanders as to all counts.

3. Northwood Police Commissioners

    a. Failure to Train, Supervise, and Control

Plaintiff alleges that the Northwood Police Commissioners, defendants Allen, Bryant, and St, Pierre, "are directly liable and responsible for the abuse suffered by the Plaintiff because said abuse was consistent with an institutional practice of the Northwood Police Department which was known to and ratified by" the defendants due to their failure to take "any effective action to prevent Northwood police personnel from continuing to engage in such conduct." Complaint ¶ 80. Plaintiff maintains that defendants (1) "had prior notice of the vicious propensities" of

Soltani yet failed to "properly train . . . [and] instruct him in the applicable law and with the proper and prudent use of force," Complaint ¶ 81; (2) "had prior notice of the defendant Jacobs['] failure to properly train, supervise, and control the Northwood Police officers," Complaint ¶ 82; and (3) "authorized and tolerated as institutional practices, and tacitly approved, encouraged and ratified" the alleged misconduct of Soltani, Complaint ¶ 83.

In an action commenced under 42 U.S.C. § 1983, "[a] supervisor may be found liable only on the basis of his own acts or omissions." Febus-Rodriquez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994) (citing, inter alia, Bowen v. Manchester, 966 F.2d 13, 20 (1st Cir. 1992)). Importantly, however, "a supervisor cannot be liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference[8] to the constitutional rights of others." Id. at 92 (citations and original footnote omitted). "Moreover, there must be an 'affirmative link' between the supervisory official's acts or omissions and his subordinate's violation of the plaintiff's constitutional rights." Id. (citations omitted).

_____

    [8]"An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989).

13

Plaintiff was asked at his deposition,[9]

> Q. . . . On what base--on what basis do you say that the Town of Northwood, John Allen, Ed Bryant Junior, and Louie St. Pierre knew, before this incident happened, about Chief Jacobs' failure to properly train, supervise, and control the Northwood police officers, including Soltani?
>
> . . . .
>
> A. Well, the Town of Northwood knew.
> Q. I'm just trying to find out why you think this.
> A. It's not a think. They know that.
> Q. Tell my why.
> A. Soltani and Maloney had not properly trained, not supervised, and was out of control at the time the Northwood police officers acted with this vicious and violent and abusive conduct to violate my liberties and to violate the constitution, the 4th Amendment, 8th Amendment, and the 14th amendment, and the 19th amendment both of the United States of America and Article--and part--article part 1N15 through 19 of the New Hampshire laws.
>
> . . . .
>
> Q. Is there any other reason that you say that the Town of Northwood and the police commissioners knew that Jacobs had failed to properly train its officers, including Soltani?
> A. Jacobs was involved with his officers. The idea is not--is not properly trained. They could have--couldn't have been trained.

------

[9]As plaintiff has not submitted any evidence or briefs in opposition to defendants' motion for summary judgment, his deposition answers, included with defendants' motion, constitute the only evidence beyond the pleadings and affidavits available to the court as part of its summary judgment determination. See, e.g., Horta, supra, 4 F.3d at 7-8 ("Summary judgment is to be decided on 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.'" (quoting Rule 56(c), Fed. R. Civ. P.)).

Jacobs weren't trained. If they were supervised, Jacobs would have supervised. If they were in control Jacobs was in it. Jacobs himself was not trained, supervised, and controlled and therefore, the Town of Northwood knew that all these three legitimate officers weren't trained properly and out of control.

. . . .

Q. Okay. What I'm trying to find out is what evidence you have that Allen, Bryant, and St. Pierre knew that?

A. They must have knew. Why, after this incident happened, the police commissioners jumped and got them fired right after, got Jacobs out of the town, 'huh? Common sense. Common sense. That tells you. Right after this incident happened, Jacobs was fired from his duties because he was not trained properly, not supervised and in control of all his officers. And moreover, he was a part of the--he was a part of the conspiracy.

Deposition of John Chamblin at 83-85, 87-89 (attached to Defendants' Motion for Summary Judgment).

On the basis of the evidence before it, the court hereby finds and rules that plaintiff has failed to raise a genuine issue regarding the alleged failure on the part of the Northwood Police Commissioners to properly train, supervise, or control police department employees. Accordingly the court herewith grants summary judgment in favor of defendants Allen, Bryant, and St. Pierre on said claim (Count VII).

15

b.  Respondeat Superior

Insofar as "the doctrine of *respondeat superior* does not apply to claims under [42 U.S.C. § 1983]," <u>Gaudreault v. Salem</u>, 923 F.2d 203, 209 (1st Cir. 1990) (per curiam), <u>cert. denied</u>, 500 U.S. 956 (1991), supervisors can only be held liable under § 1983 on the basis of their own acts or omissions, <u>Febus-Rodriguez</u>, <u>supra</u>, 14 F.3d at 91-92.  As the court has hereinabove determined that plaintiff's evidence fails to raise a genuine issue regarding an "affirmative link," <u>Gaudreault</u>, <u>supra</u>, 923 F.2d at 209, between the acts of the police commissioners and the offending employees, defendants' motion for summary judgment with respect to the respondeat superior allegation (Count IX) must be and herewith is granted.


4.  Towns of Northwood and Epsom

a.  Failure to Train, Supervise, and Control

Plaintiff's claims against the Towns of Northwood and Epsom are essentially based on their purported failure to properly train, supervise, and control Officers Soltani and Maloney.  The towns are potentially exposed to further liability on account of the various claims made against the town employees in their official capacities.  <u>See</u>, <u>e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally

16

represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 690 n.55 (1978)).

Pursuant to Supreme Court precedent,

> a local government may not be sued under §
> 1983 for an injury inflicted solely by its
> employees or agents.  Instead, it is when
> execution of a government's policy or custom,
> whether made by its lawmakers or by those
> whose edicts or acts may fairly be said to
> represent official policy, inflicts the
> injury that the government as an entity is
> responsible under § 1983.

<u>Monell</u>, <u>supra</u>, 436 U.S. at 694.  Moreover, "a governmental entity is liable under § 1983 only when the entity itself is a '"moving force"' behind the deprivation . . . thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  <u>Graham</u>, <u>supra</u>, 473 U.S. at 166 (citing and quoting <u>Monell</u>, <u>supra</u>; <u>Polk County v. Dodson</u>, 454 U.S. 321, 326 (1981); <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 817-18 (1985)) (footnote omitted).

A custom for the purposes of 42 U.S.C. § 1983 may arise due to "'persistent and widespread discriminatory practices of state officials . . . .'"  <u>Monell</u>, <u>supra</u>, 436 U.S. at 691 (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167 (1970)).  Similarly, the acts of a municipal employee do not rise to the level of "policy or custom" unless said activity was directed by

17

one "whose edicts or acts may fairly be said to represent official policy . . . ." Monell, supra, 436 U.S. at 694. Moreover, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Tuttle, supra, 471 U.S. at 824 (footnotes omitted).

Although a municipality can face liability under section 1983 for inadequate training of its employees, such liability will accrue "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton v. Harris, 489 U.S. 378, 388 (1989) (footnote omitted); see also Bordanaro v. McLeod, 871 F.2d 1151, 1158-63 (1st Cir.), cert. denied sub nom., Everett v. Bordanaro, 493 U.S. 820 (1989); Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989).

When viewed in its totality, the evidence fails to implicate an unconstitutional institutional practice of either town. Defendants have provided the personnel files for Chief Jacobs as well as Officers Soltani and Maloney, see Exhibits D-F (attached to Defendants' Motion for Summary Judgment), which contain

18

certification and training records of police academy training in addition to customary human resources department records. Said records indicate that defendants Soltani and Maloney received education in proper arrest and use of force methods and satisfactorily completed their training before the New Hampshire Police Standards and Training Council.[10]

Plaintiff, conversely, offers little more than speculation and unsubstantiated innuendo when asked about town institutional practices:

> Q. On what basis do you say that the acts that happened to you were consistent with an institutional practice of the Northwood Police Department?
> A. Well, the police commissioners in Northwood New Hampshire, their job is to train--their job is to protect the citizens from misconduct, from police beating up of citizens. That's why we have them in there. And in this case, that they should have been very well-known and investigate about Fred Jacobs' past police record, which they didn't at the time.
> And Fred Jacobs trained his officers to gain his own purpose, money investment for the Town of Northwood, hired this couple macho man that don't know the law and just probably said, go ahead, go beat up on this guy. And in other words, for him to gain moneys and his job. Eventually, John Allen, Ed Bryant, Louie St. Pierre, who was the police commissioners, should have been aware of this and trained those officers and told

---

[10]The record further reveals that at the time of the alleged incident Officer Soltani was enrolled as a law student at Franklin Pierce Law Center in Concord, New Hampshire.

19

them there is only certain things that can be done during the course of using force. And my action, I had no gun, no knives. I just got woken up, came out, and asked the man for a warrant. Next thing you know, I was being playing a soccer ball and a baseball bat was being used on my head.

Q. Are you aware of any other incidents remotely similar to this incident in the Town of Northwood?

A. It happens all the time, yes, I'm aware. There is, but sometime people fail to take proper action because they're afraid of the harassment that might be caused by the police and the town of Northwood. And there's also other people that had one lawsuit from those kind of actions, that's why the police commissioners got involved. That's why we put a police commissioners. That was due because of these kind of action the police misuse of force. People was complaining. Use of force was unnecessary.

Q. Why don't you tell me which other incidents you're aware of.

A. At this moment, I have paper works, but I don't have it with me right now. But at this moment when we get ready for trial, I will bring those with me.

Q. The point of this is so I can find out about it in advance of trial. Do you know of any other people?

A. I do know, but I don't have recollection right now.

Chamblin Deposition at 74-76. Chamblin was then asked, "What prior notice do you claim the Town of Northwood had of the vicious propensities of Mr. Soltani and particularly his hostility toward you?," to which he replied,

A. Well, his anger. His anger that night when he saw me. First thing when I seen him, he had a face like he was ready to kill me. His anger. I mean, when you--as a police

20

> officer, you learn to be trained to be very polite, have patience. Those are the first thing they train you. But that anger in his face, it was like--it's like a cat was after a mouse and the mouse has no where to run. And his claws was up in the air ready to attack, and the mouse was--happened to be minding his own business. This is what I'm saying.

Chamblin Deposition at 80.

Plaintiff was additionally questioned regarding the conduct of the Town of Epsom and its knowledge of Officer Maloney's alleged vicious propensities.

> Q. What evidence do you have that the Town of Epsom knew before April 20, 1990, of the vicious propensities of Craig Maloney and particularly his hostility toward you?
> A. Well, I can say to that, before you give somebody a gun and a badge to represent you, that don't mean that you give them a right to go out and hurt somebody.
> Q. Right. But this says that they knew that Maloney didn't like you and that he, on top of that, was a dangerous man. Why do you say that? How did they know that?
> A. Because they hired him. They hired him. They hired him. They hired him. When they hired him, they are responsible for you conduct. That's why they give him the gun, they gave him the paycheck.
> Q. I understand. What you've said is they knew that he was vicious.
> A. Of course if they didn't know, then they wouldn't hired somebody that goes by and abide by the law. That's what the laws are based for. When they hire somebody, the laws--they train them on the laws. They said, yes, you use excessive force when somebody has a gun or a knife ready to hurt you, you know. It's common sense.
> Q. You and I agree on that. What I don't

21

agree with, and what I'm trying to find out
the answer to is why you think that the Town
of Epsom and the Town of Northwood knew that
Maloney and Soltani were vicious or vicious
people and that, in particular, they didn't
like you.  That's all I'm trying to find out.
You won't find it looking in there.
     A.  Well, I stated my reasons already that
the Town of Epsom is liable.  They knew very
well that Maloney was improperly trained.
     Q.  Let's--
     A.  He was improperly trained, supervised,
and control, and therefore, he could act as a
judge on his own and which is what he did.
He acted as he's the judge, I'm going to beat
up this guy, I'm going to punish him, and
that's why he did not give me a chance to
prove in court to defend myself.  He denied
me my liberty and my due process, so the town
knew.
     Q.  Is that your answer to my question?
     A.  Yes, the town knew.

Chamblin Deposition at 92-94.

The court thus finds and rules that plaintiff has failed to put forth credible evidence by which a jury could find in his favor on the claims against the Towns of Northwood and Epsom. Accordingly, the court herewith grants defendants' motion for summary judgment regarding plaintiff's "failure to train" allegations (Counts VIII and X).


b.  Respondeat Superior

In Counts IX and XI, plaintiff contends that the Towns of Northwood and Epsom are liable, respectively, for the conduct of Officers Soltani and Maloney on the night of April 20, 1990.

22

However, as the Supreme Court has limned,

> Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor --or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

Monell, supra, 436 U.S. at 691 (emphasis in original).

The failure of plaintiff's "failure to train" claim, supra, part 4.a, compels the court to grant summary judgment with respect to plaintiff's respondeat superior claims. In consequence thereof, summary judgment must be and herewith is granted in defendants' favor as to Counts IX and XI.

5. Conspiracy

In Count VI of the complaint, plaintiff alleges a generalized "conspiracy" cause of action against defendants Soltani and Maloney. As best as the court can tell, said count appears to invoke 42 U.S.C. § 1985(3), which provides, in pertinent part,

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, . . . the party so injured or deprived may

23

> have an action for the recovery of damages,
> occasioned by such injury or deprivation,
> against any one or more of the conspirators.

42 U.S.C. § 1985(3) (1994).

A successful claim under section 1985(3) requires a plaintiff to demonstrate not only a conspiracy to deprive a person of equal protection of the laws, but also that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). As part of said demonstration, a complainant must allege facts showing that the defendants conspired against him "'"because of", not merely "in spite of" its adverse effects upon an identifiable group.'" Bray v. Alexandria Women's Health Clinic, ___ U.S. ___, ___, 113 S. Ct. 753, 760 (1993) (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279 (1979)). "Failure to allege facts from which any inference of such a motivational factor can be drawn requires dismissal of a section 1985 claim." Jackson v. Faber, 834 F. Supp. 471, 475 (D. Me. 1993) (citing Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976)).

Although plaintiff's conspiracy claim is generalized and nonspecific, the Complaint does indicate that he is a Haitian citizen "of African-American descent." Complaint ¶ 4. During plaintiff's deposition, defense counsel inquired into the issue

24

of race-based animus.

Q. Why do you think . . . Soltani and Maloney did what you say they've done?
A. Maybe you might know. You should ask him those questions.
. . . .
Q. Do you think it was racially motivated?
A. Well, --
Q. They're both white, aren't they?
A. Both Italians. And I know Italians don't like blacks. I know that for a fact.
Q. Do you think it was racially motivated then?
A. Well, from my past experience dealing with Italians, that's the first thing that came to my mind and -- but as I look at it, the situation, I think they were taking the fall for the town.
Q. Do you know if either Maloney or Soltani have any prior history of racial hatred?
A. I have no idea.
Q. You don't know of any?
A. No, I don't. I don't.
Q. Did they ever say anything to you that night about race or about you being black?
A. Well, I was being called a lot of names.
Q. Like what?
A. Well, niggers, nigger, Asian, whatever.
Q. So, --
A. About that I had AIDS and all that stuff.
Q. Well, why do you think they did this then?
A. To intimidate me, that's all. I think that was --
Q. For what reason?
A. Well, they had the power in their hands. They had the guns, the handcuffs. Once they handcuff you, they've got the guns, so what do you think?
Q. Why do they want to intimidate you?
A. Maybe somebody in town wanted -- maybe something that probably happened in the town

25

they couldn't solve and they were getting
their ass chewed about something, I don't
know. That's the only thing that came to my
mind. I was told about something, and I
can't repeat it, but I know this for a fact
from the grapevine.

. . . .

Q. So, the answer to your question is --
answer to my question is that you don't know
of any reason why they did this to you?
A. Yes, I do know a reason why they did
this.
Q. Why?
A. I think it was because of the
interracial marriage, one of them. And they
wanted my land. And I think they were being
paid by some rich monster who wanted me off
so they could have the land. And I fully
think that's probably one of the reasons,
that's what I think, you know.

Chamblin Deposition at 123-26.

In the view of the court, plaintiff has failed to "'allege
facts showing that the defendants conspired against the
plaintiff[] because of [his] membership in a class . . . ,'"
Hahn, supra, 523 F.2d at 469 (quoting Harrison v. Brooks, 519
F.2d 1358, 1360 (1st Cir. 1975), and thus now finds and rules
that plaintiff's section 1985(3) claim fails as a matter of law.
Accordingly, defendants' motion for summary judgment as to the
conspiracy claim (Count VI) must be and herewith is granted.

6. Qualified Immunity

It has become the general rule of qualified immunity that
"government officials performing discretionary functions[]

26

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[11] "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991). Accordingly, "a court may determine that a defendant is entitled to qualified immunity if either the plaintiff fails to properly assert and support a claim based on the violation of a constitutional right, or the court concludes that the law on which plaintiff's claim was based was not clearly established when the defendants acted." St. Hilaire v. Laconia, ___ F. Supp. ___, ___, No. 93-191-B, 1995 WL 150508, at *3 (D.N.H. Mar. 31, 1995) (Barbadoro, J.); accord Siegert, supra, 500 U.S. at 232;

---

[11]According to the First Circuit, this formulation removes from consideration "allegations about the official's subjective state of mind . . . . [Thus,] the reasonableness of the official conduct is not measured against the official's *actual* knowledge of constitutional standards and the probable constitutionality of his or her action, but rather against a relatively uniform level of 'presumptive knowledge' of constitutional standards." Floyd v. Farrell, 765 F.2d 1, 4-5 (1st Cir. 1985) (footnote omitted) (emphasis in original) (citing Harlow, supra, 457 U.S. at 815).

27

Febus-Rodriguez, supra, 14 F.3d at 91.

"Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'" Elder v. Holloway, ___ U.S. ___, ___, 114 S. Ct. 1019, 1023 (1994) (citations omitted).  Thus, when "a defendant pleads a defense of qualified immunity, '[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred . . . .'" Siegert, supra, 500 U.S. at 231 (quoting Harlow, supra, 457 U.S. at 818).

a.  Officers Soltani and Maloney

(1) The Initial Arrest Warrant

"An officer will be held liable for seeking an arrest warrant later found to be without probable cause only if there *clearly* was no probable cause at the time the warrant was requested." Floyd, supra, 765 F.2d at 5 (emphasis in original); see also Malley v. Briggs, 475 U.S. 335, 345 (1986) ("The . . . question . . . is whether a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied

28

for the warrant."). "'Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed a crime.'" Floyd, supra, 765 F.2d at 5 (quoting State v. Lemire, 121 N.H. 1, 4-5, 424 A.2d 1135, 1138 (1981)).

Officer Soltani's affidavit in support of the arrest warrant indicates (1) that he received complaints from four Old Turnpike Road residents regarding plaintiff's operation of the OHRV on said road and (2) that a check of the Department of Safety records indicated that plaintiff remained certified as a habitual offender. See Arrest Warrant of Apr. 20, 1990 (attached to Defendants' Motion for Summary Judgment as Exhibit A). The evidence before the court also contains the written complaint of Old Turnpike Road resident Frank Wilson. See Incident Report dated Apr. 20, 1990 (attached to Defendants' Motion for Summary Judgment as Exhibit B).

In accordance with the evidence before it, the court hereby finds and rules that, under the totality of the circumstances, probable cause existed and the warrant for plaintiff's arrest was properly issued.

29

<u>(2) Malicious Prosecution</u>[12]

Chamblin asserts that "the Defendant police officers maliciously persecuted the Plaintiff in that they arrested the Plaintiff, without probable cause, with the intent and primary objective to force the Plaintiff out of the Town of Northwood." Complaint ¶ 66.

"[T]o state a claim under Section 1983, the complaint must assert that the malicious conduct was so egregious that it violated substantive or procedural due process rights under the Fourteenth Amendment." <u>Torres v. Superintendent of Police</u>, 893 F.2d 404, 409 (1st Cir. 1990). Moreover, "[a]n actionable section 1983 malicious prosecution claim based on a substantive due process deprivation must allege 'conscience-shocking' conduct by the defendants. A procedural due process claim is not actionable unless, *inter alia*, no adequate 'post-deprivation remedy' is available under state law." <u>Pérez-Ruiz v. Crespo-Guillén</u>, 25 F.3d 40, 42 (1st Cir. 1994) (citing <u>Torres</u>, <u>supra</u>,

_____

[12]Chamblin's "abuse of process" claim, asserted in conjunction with that for malicious prosecution, does not implicate a federal cause of action and is herewith summarily dismissed. <u>See</u>, <u>e.g.</u>, <u>Santiago</u>, <u>supra</u>, 891 F.2d at 388 (implicitly rejected as a theory of liability based on the qualified immunity analysis, "the Supreme Court has in effect held that abuse of process --as a claim separate from a claim that there was no probable cause to make the arrest or institute the prosecution--is not cognizable as a civil rights violation under § 1983").

30

893 F.2d at 410).[13]

The court finds that the record evinces no "conscience-shocking" facts upon which plaintiff could sustain this cause of action. Accordingly, summary judgment is herewith granted for defendants on the malicious prosecution claim (Count V).

### (3) Simple Assault and Resisting Arrest

In addition to being charged with the habitual offender offense, plaintiff was charged with simple assault[14] and resisting arrest.[15] Plaintiff alleges that his arrest on these

_____

[13]A section 1983 malicious prosecution claim based on a substantive due process theory may now be even less tenable than it was at the time Torres was decided, in light of the Supreme Court's decision in Albright v. Oliver, ___ U.S. ___, 114 S. Ct. 807 (1994). See Pérez-Ruiz, supra, 25 F.3d at 42 ("*Albright* would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983--superceding even *Torres*' very limited tolerance of reliance on substantive due process in this area.").

[14]RSA 631:2-a, outlining simple assault, provides, in pertinent part:

> I. A person is guilty of simple assault if he:
>     (a) Purposely or knowingly causes bodily injury or unprivileged physical contact to another; or
>     (b) Recklessly causes bodily injury to another . . . .

RSA 631:2-a, I(a)-(b) (1986).

[15]Pursuant to RSA 642:2,

> A person is guilty of a misdemeanor when he

grounds constituted an unreasonable arrest and seizure of the person in violation of the Constitution.

A law enforcement official is entitled to qualified immunity for a warrantless arrest "so long as the presence of probable cause is at least arguable." Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992); see also Floyd, supra, 765 F.2d at 5 (arresting official's qualified immunity pierced "only if there clearly was no probable cause at the time the arrest was made").

The evidence before the court establishes, in the least, that probable cause arguably existed to arrest Chamblin for simple assault and resisting arrest. It is plainly evident that Soltani and Maloney were recognized to be law enforcement officials seeking Chamblin's arrest. Moreover, an eyewitness to the arrest described the scene as follows:

> . . . There were two police officers present in the street who appeared to be trying to put handcuffs on John Chamblin. They were having a great deal of difficulty accomplishing this task because Chamblin was being very verbal and physically resisting their efforts. The three men moved to the front of the Northwood cruiser where the police officers continued to try to put

---

> knowingly or purposely physically interferes with a person recognized to be a law enforcement official seeking to effect an arrest or detention of himself or another regardless of whether there is a legal basis for the arrest.

RSA 642:2 (Supp. 1994).

32

handcuffs on Mr. Chamblin.

    5.  At no time did I observe either of the police offers [sic] hitting Mr. Chamblin with a fist, night stick or any other object.  I never observed either of them kicking him or slamming his head into the cruiser.

    6.  After Mr. Chamblin was handcuffed he continued to be verbally abusive and was placed in the cruiser.  Again, I observed nothing which would have led me to believe that either of the officers used excessive force in putting him into the cruiser.

Affidavit of Sandra J. Bailey ¶¶ 4-6 (attached to Defendants' Motion for Summary Judgment as Exhibit 3).  Further eyewitness testimony stated,

    5.  There were two police officers trying to get a man that I recognized as John Chamblin out of the car.  After he got out of the car all three of the men moved to the front of the first cruiser.  Mr. Chamblin at this time was clearly resisting the officers. He was kicking at them and appeared to be trying to get away.

    6.  In order to put handcuffs on Mr. Chamblin the two officers pushed him against the front of the cruiser.  I did not see either officer hit Mr. Chamblin with a nightstick, a fist or anything else.  I did not see either of them kick him.  I have seen the Rodney King videotape and what I saw was nothing like it.  The two officers got control of Mr. Chamblin and placed him in the first cruiser.

Affidavit of Peter Lennon ¶¶ 5-6 (attached to Defendants' Motion for Summary Judgment as Exhibit 4).

    In light of the evidence before it, the court hereby finds and rules that defendants Soltani and Maloney are entitled to qualified immunity with regard to their actions in effecting the

33

arrest of plaintiff. Accordingly, defendant Maloney's motion for summary judgment, in his individual capacity, is granted with respect to plaintiff's section 1983 claims.[16] Since the evidence failed to demonstrate that a "policy or custom" of either the Town of Northwood or the Town of Epsom was a "moving force" behind the alleged section 1983 deprivations, see supra part 4.a, the court further grants the motion for summary judgment with respect to all section 1983 claims asserted against defendants Soltani and Maloney in their official capacities. See Graham supra, 473 U.S. at 166 ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law").

b. Chief Jacobs

Plaintiff asserts that defendant Jacobs initiated a course of conduct that included, inter alia, contact with the Immigration and Naturalization Service (INS) "with a purpose to deprive the Plaintiff of his civil rights and to drive the Plaintiff out of Town and for no other reason." Complaint ¶ 97.

---

[16]The court's docket indicates the most current appearance filed on behalf of Officer Soltani in his individual capacity is that of Tony Soltani, Esq., dated May 2, 1994. Since Soltani did not take part in the summary judgment motion sub judice, the case still remains viable against him in his individual capacity only. Defendant Soltani's counterclaims for assault and battery are likewise unaffected by today's ruling.

34

Defendant counters by indicating that no facts have been adduced or pled which demonstrate "reckless or callous indifference" to plaintiff's federal rights.

Under Title 8, section 1251, of the United States Code,

> **(a) Classes of deportable aliens**
> Any alien . . . in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:
> > **(2) Criminal offenses**
> > > **(A) General crimes**
> > > . . . .
> > > > **(ii) Multiple criminal convictions**
> > > > Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.
> > > > **(iii) Aggravated felony**
> > > > Any alien who is convicted of an aggravated felony at any time after entry is deportable.

8 U.S.C. § 1251(a)(2)(A)(ii)-(iii) (Supp. 1995).

The evidence before the court reveals that plaintiff has a storied criminal past that includes, among others, convictions for burglary, theft, assault, receiving stolen property, and escape. See N.H. Dep't of Safety records (attached to Defendants' Motion for Summary Judgment as Exhibit G). More specifically, by 1986 Chamblin had compiled

> an extensive motor vehicle and criminal record in the State of New Hampshire. His

35

> convictions consist of 21 violations, 7
> misdemeanors and 6 felonies. He has been
> sentenced 3 times to County Houses of
> Correction, with one escape, and 3 times to
> the New Hampshire State Prison. He was on
> parole from July 1983 to June 1985, and has
> been on probation in New Hampshire and
> Massachusetts.

Concord District Court Probation Dep't Pre-Sentence Investigation Report at 2 (included in Exhibit G).

The court finds nothing in defendant's reporting of Chamblin's criminal record to the INS, nor his subsequent participation in either the arrest or deportation hearing conducted by INS officials, that indicates a violation of any "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, supra, 457 U.S. at 818. As such, the court finds and rules that Jacobs' actions were "objectively reasonable" under the circumstances and thus fail to infringe upon any right of plaintiff guaranteed by 42 U.S.C. § 1983. Accordingly, defendant Jacobs' motion for summary judgment must be and herewith is granted as to all counts.

7. Supplemental State-Law Claims

With the exception of the claims asserted against Officer Soltani in his individual capacity, all of plaintiff's federal claims have now been dismissed. The court is hereupon entitled, at its discretion, to either retain supplemental jurisdiction and

36

continue to adjudicate the state-law claims or decline same, leaving the plaintiff to seek relief in state court. <u>See</u> 28 U.S.C. § 1367(c) (1993).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims . . . ." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988). Under the present facts, the court finds such a prudential course to be appropriate. Accordingly, plaintiff's state-law claims are herewith dismissed without prejudice as to all defendants except Soltani in his individual capacity.

<u>Conclusion</u>

For the reasons set forth herein, defendants' motion for summary judgment (document 34) is granted. The case is dismissed as to all defendants with the exception of Officer Soltani individually.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 8, 1995

cc:  John Chamblin, pro se
     Robert W. Upton II, Esq.

37