**Robert Reid v. Brodeur, et al.**          CV-96-492-B    2/14/01
                  **UNITED STATES DISTRICT COURT**
             **FOR THE DISTRICT OF NEW HAMPSHIRE**


**Robert Reid**

     v.                               **Civil No. 96-492-B**
                                      Opinion No. 2001DNH032
**Paul Brodeur, et al.**


                    **MEMORANDUM AND ORDER**

     While incarcerated at the New Hampshire State Prison, Robert

Reid brought this suit against 18 present and former members of

the New Hampshire Department of Corrections seeking damages and

injunctive relief pursuant to 42 U.S.C. § 1983.  He alleges that

the defendants violated: (1) his Eighth Amendment right to be

free from cruel and unusual punishment; (2) his First Amendment

right to be free from retaliation for exercising his First

Amendment right of access to the courts; (3) his Fourteenth

Amendment right to equal protection; and (4) his Fourteenth

Amendment right to procedural due process based on his loss of

good time credits.[1]  The crux of his complaint is that several

_____

     [1] In a prior Memorandum and Order, I dismissed Reid's
Fourteenth Amendment procedural due process claims based on
punitive segregation, transfer within the special housing unit,
and reclassification.  See Reid v. Brodeur, 2000 DNH 022, 6

corrections officers beat and physically harassed him on multiple occasions in retaliation for his filing lawsuits against them and because he is black.

I have before me the defendants' motion for partial summary judgment.[2] For the following reasons, I grant the defendants' motion in part and deny it in part.

## I.   BACKGROUND[3]

Reid was convicted of aggravated assault in 1990 and received a ten-to-thirty year prison sentence. Reid challenges a wide variety of actions allegedly taken against him between June 9, 1995 and February 23, 1998, while he was incarcerated at the

---

(January 24, 2000). I also dismissed Reid's First Amendment right of access to the courts claims and his official capacity claims for damages. See id. at 2, 7.

[2] Reid moved for an extension of time to file a cross motion for summary judgment, (Doc. no. 108). I denied Reid's motion for an extension of time, and therefore, I do not address the claims raised in Reid's motion for summary judgment.

[3] Unless otherwise noted, I take the facts from the Third Amended Complaint (the "Complaint"), (Doc. no. 86). I construe the evidence in the light most favorable to Reid, the non-moving party. See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

New Hampshire State Prison ("NHSP").[4]

On June 9, 1995, after Reid had finished his meal, a corrections officer ("C.O.") ordered him to clear his table. Reid refused and the C.O.'s isolated him in the dining room. After Reid tried to leave the room, C.O. Jay Hislop forced Reid to the floor and struck and kicked him several times. The defendants allege that Reid struck Hislop with a fork as he was trying to leave the room. Reid suffered abrasions, a head contusion, and a wrist injury as a result of this incident. Joseph Bourgeois, a security lieutenant, was also involved in this attack on Reid.

The next day C.O. Thomas Casey called Reid a "big ape" when Reid asked Casey why he had not received his shower and his day-room privileges. Lieutenant Bourgeois witnessed this incident but failed to report it as an offense. On several other occasions Casey and C.O. James Walgreen made monkey noises and monkey gestures directed at Reid, while at the same time encouraging other C.O.'s to direct racial slurs at him. At a later date Hislop also made monkey noises directed at Reid and

---

[4] On or about February 23, 1998, Reid was transferred to the Northern Correctional Institution in Somers, Connecticut.

referred to him as "cocoa."

Beginning about June 22, 1995, Reid's classification was changed to C-5, maximum, and he was placed in solitary confinement for three months.

Walgreen, on February 24, 1996, pushed Reid in the back and called him names because he was moving back to his cell too slowly.

On May 9, 1996, Hislop purposefully cuffed Reid too tightly, and Reid suffered discomfort as a result. Casey and Walgreen were also involved in harassing Reid during this incident.

Casey and C.O. Peter Capriglione denied Reid's request for yard time on July 7, 1996. Later that day as Reid was headed to the day room, Casey ordered Reid back to his cell. When Reid entered his cell, Casey attacked him by putting him in a choke hold and kicking and punching him. Capriglione also punched, kicked, and kneed Reid during this assault. Casey then knocked Reid to the floor, and the C.O.'s called for back-up. At this point, Walgreen began kneeing Reid in his lower back as he lay on the floor. Casey alleges that Reid dug his fingernails into Casey's arm as he resisted Casey's order to get back into his cell. Reid complained of neck and back injuries resulting from

-4-

this incident.

After this incident, Reid was placed in punitive segregation for a number of days. On July 30, 1996, Reid moved back to solitary confinement and was placed on restrictive single movement status. Reid alleges that Greg Crompton and Cindy Belanger Crompton,[5] both classification officers at NHSP, placed him in solitary confinement on multiple occasions without adhering to certain procedural safeguards.

On October 3, 1996, because Reid refused to give the C.O.'s his tobacco, Unit Manager Davies, Lieutenant Grimaldi, and Lieutenant Dragon directed Corporal Shawn O'Neil,[6] Capriglione, and Hislop to take Reid to the shower room and strip him. They maced him several times with capstun (pepper spray) and escorted him back to his cell naked. At the time, Reid's property and legal papers were removed from his cell. The defendants allegedly initiated this attack in retaliation for Reid's filing a complaint in this Court on September 27, 1996. Reid alleges

---

[5] Cindy Belanger has married since the filing of the complaint, and her married name is Crompton.

[6] Corporal O'Neil supervises the inmates and corrections officers.

that the defendants learned of the suit when Reid received a court order directing him to send the Court a Certificate of Inmate Accounts. Reid also states generally that Casey, O'Neil, Hislop, Capriglione, and C.O. Arthur Locke treated Reid differently from other inmates and threatened him in retaliation for his filing lawsuits against them.

The next morning Hislop and Capriglione continued to harass Reid as they opened his cell door and threw a liquid at him without any provocation from Reid. Later that day after asking Reid if he wanted some soup, Hislop threw hot soup at Reid, burning his face. Locke, Capriglione, and Hislop also threw water from the shower at Reid.

Reid received thirty-five disciplinary reports during the time period covered by this lawsuit. Reid asserts that Christopher Kench, Ray Guimond, and Lester Eldridge, hearing officers at NHSP, deprived him of due process by not allowing him to present witnesses at disciplinary hearings held on July 21, 1996, November 7, 1996, and November 12, 1996, concerning three of these reports. Reid claims that he submitted a witness list within the required time frame for each hearing. The defendants

claim, however, that they did not receive the witness list prior to each hearing.  See Defs.' Mot. for Partial Summ. J., Doc. no. 106, Affs. of Brodeur, Cunningham, Sokolow.  Reid suffered a total loss of 215 days of good time credit as a result of being found guilty at these disciplinary hearings.  Reid also complains that many of the disciplinary reports were fabricated by various C.O.'s including Locke and Hislop.

On December 17, 1996, Reid noticed that there were ants in his soup.  Another inmate stated that he saw Corporal O'Neil, Locke, and Hislop tampering with the food.

On January 17, 1997, Reid asked the C.O.'s to cover his meal while he was in the shower.  When Reid returned from the shower, his meal was sitting on his shelf uncovered.  He walked into his cell; and with his handcuffs still on, he walked over to the shelf and tried to pass the food tray out through the food slot. In doing so, he spilled some of the hamburger onto the floor.

After lunch Corporal O'Neil accused Reid of throwing feces outside his cell.  Reid denied this accusation.  A few minutes later Lieutenant Dragon ordered that Reid be handcuffed and taken to the shower room.  Reid also alleges that Davies was directing

the C.O.'s actions during this incident.  Locke, Capriglione, and Corporal O'Neil handled Reid roughly as they took him to the shower room.  There Corporal O'Neil sprayed the capstun at Reid several times, although Reid claims he never refused a "cuff up" order.[7]  As the C.O.'s brought Reid back to his cell, he heard one of them say, "that's what you get for suing us."

Reid filed numerous complaints with the appropriate prison officials concerning the disciplinary actions taken against him, the actions of the corrections officers, and the fact that he was denied entitlements such as day-room time.  Reid alleges that Paul Brodeur, the former Commissioner of the New Hampshire Department of Corrections, Michael Cunningham, the former warden, and Michael Sokolow, a former unit manager of the special housing unit, did not investigate or respond to his complaints and that they wrongfully denied his appeals regarding his disciplinary hearings.

_____

[7] A "cuff up" order requires that the inmate stand with his back to the cell door and place his hands through the food slot to be handcuffed.  When an inmate refuses to be handcuffed, a supervisor brings capstun to the scene.  See Rep. and Recommendation, Doc. no. 29, at 4.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] ... may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-movant.  See Oliver, 846 F.2d at 105.  The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable

finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323). I apply this standard in ruling on the defendants' motion for summary judgment.

## III. **DISCUSSION**

In my prior Memorandum and Order in this case, I noted that it was unlikely that all the defendants could be liable for each of Reid's constitutional claims, but I decided not to settle this issue on my own. See Reid v. Brodeur, 2000 DNH 022, 3 n.1. This Memorandum and Order focuses on ascertaining which defendants can be held liable for each of Reid's claims. The defendants argue that the supervisory officials are entitled to summary judgment as to all claims against them because they may not be held liable under a theory of vicarious liability. They also assert that the hearing officers are entitled to summary judgment as to the Fourteenth Amendment procedural due process claim because Heck bars Reid from litigating this claim. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

## A.    Eighth Amendment Excessive Force Claim

Reid alleges that the corrections officers physically abused him to retaliate against him and because he is black.  In order to meet the test for an Eighth Amendment excessive force claim, Reid must show that the force was applied "maliciously and sadistically to cause harm" rather than in a "good-faith effort to maintain or restore discipline."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  In making this determination, the court should look at the need for the use of force, the connection between the need for use of force and the amount of force used, and the extent of the injury suffered by the inmate.  See id.  Defendants assert that this excessive use of force claim may proceed only as to defendants Casey, Walgreen, O'Neil, Hislop, Locke, and Capriglione.[8]

### 1.    No Vicarious Liability Under 42 U.S.C. § 1983

Defendants argue that former Commissioner Brodeur, former Warden Cunningham, and Sokolow, the former manager of the special

---

[8] Reid and the defendants agree that Crompton, Belanger Crompton, Kench, Guimond, and Eldridge may not be held liable on this claim.  See Pl.'s Mot. in Opp'n to Defs.' Mot. for Partial Summ. J., Doc. no. 107, at 3.  Therefore, I grant these defendants summary judgment as to this claim.

-11-

housing unit, are entitled to summary judgment on this count
because as prison supervisory personnel, they may not be held
liable under a theory of vicarious liability.[9] See Febus-
Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir.
1994). In a § 1983 action, a supervisor may only be held liable
"on the basis of his own acts or omissions." Id. at 92.
Furthermore, a supervisor's acts or omissions must rise to the
level of "reckless or callous indifference to the constitutional
rights of others." Id. The test for what constitutes reckless
or callous indifference is whether it would be apparent to a
reasonable supervisor that his conduct was "very likely to
violate an individual's constitutional rights." Germany v.
Vance, 868 F.2d 9, 18 (1st Cir. 1989). In addition, there must
be an "affirmative link" between a subordinate's misconduct and
the supervisory official's action or inaction. Febus-Rodriguez,
14 F.3d at 92. Other factors that assist in determining
liability are: (1) whether the supervisor had knowledge of the

---

[9] Defendants Kench, Eldridge, Guimond, Brodeur, Cunningham,
and Sokolow have also moved for summary judgment as to all claims
on the grounds of qualified immunity. Because I find that these
defendants are entitled to summary judgment as to all claims on
other grounds I do not address the qualified immunity arguments
in this Memorandum and Order.

-12-

alleged violations; and (2) whether the supervisor's actions or inactions could be viewed as "supervisory encouragement, condonation, or acquiescence." Lipsett v. Blanco, 864 F.2d 881, 902 (1st Cir. 1988).

2. **Supervisor Liability in this Case**

Reid alleges that Brodeur, Cunningham, and Sokolow did not investigate or respond to his complaints regarding the kind of treatment he received from the corrections officers. See Compl., Doc. no. 86, ¶¶ 28, 36, 37, 41, 56, 66, 73. These defendants were aware of the alleged incidents of excessive force because they reviewed Reid's complaints. As their affidavits indicate, the defendants reviewed and/or investigated the complaints, concluded in each instance that no violation had occurred, and provided an answer to Reid, or they referred the complaint to the appropriate person for a response. Defs.' Mot. for Partial Summ. J., Doc. no. 106, Affs. of Brodeur, Cunningham, Sokolow. The fact that Reid disagrees with the outcome of the complaint process, however, does not provide a basis for finding that these defendants, in reviewing the complaints, acted with indifference to Reid's constitutional rights. See Febus-Rodriguez, 14 F.3d at 92.

Arguably, Reid's pro se complaint suggests a claim that these defendants' inaction constitutes callous and reckless indifference to Reid's constitutional rights because they should have acted to prevent the continuing misconduct of the corrections officers, in addition to reviewing his complaints of isolated incidents. See Estate of Davis v. Delo, 115 F.3d 1388, 1396 (8th Cir. 1997); cf. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562-64 (1st Cir. 1989) (holding that the immediate supervisor of a police officer was liable for that officer's actions where the totality of the evidence suggested that the supervisor's inaction rose to the level of callous and reckless indifference to the constitutional rights of others).

Reid, however, does not provide any additional evidence: (1) that other prisoners lodged complaints about the excessive use of force by the corrections officers; (2) that the corrections officers had a reputation for misconduct; (3) that their supervisors gave any indication of concern about the corrections officers' actions; or (4) that the corrections officers had been disciplined in the past for inappropriate use of force against prisoners. See id. Without such additional evidence, the uncorroborated facts that Reid alleges do not support a finding

-14-

that a reasonable supervisor would feel that his inaction was "very likely to violate [Reid's] constitutional rights." Germany, 868 F.2d at 18; see Estate of Davis, 115 F.3d at 1396; cf. Gutierrez-Rodriguez, 882 F.2d at 562-64. Thus, because Brodeur, Cunningham, and Sokolow cannot be held liable on the basis of their acts or omissions, they are entitled to summary judgment as to this claim.

I decline to grant summary judgment as to this claim for defendants Davies, Grimaldi, Dragon, and Bourgeois. These defendants may be liable for their own acts. See Febus-Rodriguez, 14 F.3d at 91-92. Davies, a unit manager in the special housing unit, Grimaldi, the platoon commander, and Dragon, a security lieutenant all allegedly directed the corrections officers to mace Reid with capstun on two different occasions. See Compl., Doc. no. 86, ¶¶ 58-59, 74-82. Thus, there is an affirmative link between the defendants' acts and the corrections officers' alleged misconduct. See Febus-Rodriguez, 14 F.3d at 92. In addition, the supervisors' conduct may rise to the level of callous and reckless indifference because they may have directed that the mace be used to cause harm, rather than to restore order, in violation of the Eighth Amendment. See Hudson,

-15-

503 U.S. at 7; Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) (holding that the Eighth Amendment prohibits the use of mace for the sole purpose of punishing or inflicting pain on a prisoner). Because Davies, Grimaldi, and Dragon may be liable for their own actions, I do not grant them summary judgment as to the Eighth Amendment claim.

Defendant Bourgeois allegedly attacked Reid in the dining room after Reid allegedly assaulted a corrections officer with a fork. See Compl., Doc. no. 86, ¶¶ 25-29, Ex. 1. Since Bourgeois allegedly engaged in the attack on Reid, he may be liable for inflicting cruel and unusual punishment. See Hudson, 503 U.S. at 7. Therefore, he is not entitled to summary judgment.

To conclude, the Eighth Amendment claim may proceed against Casey, Walgreen, O'Neil, Hislop, Locke, Capriglione, Davies, Grimaldi, Dragon, and Bourgeois. Defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to this claim.

B. **First Amendment Retaliation Claim**

Reid claims that he was beaten, harassed, and suffered other adverse actions because he filed this lawsuit against prison officials. To prevail on his claim of retaliation, Reid must

show that: (1) he had a First Amendment right; (2) the defendants took an adverse action against him; (3) with the intent to retaliate against him; and (4) the retaliatory act caused the injury for which he is seeking compensation.  See McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  The First Circuit Court of Appeals recognizes an inmate's First Amendment right of access to the courts and will redress any actions by prison officials that punish an inmate for exercising this right.  See Ferranti v. Moran, 618 F.2d 888, 891-92 (1st Cir. 1980).

The defendants assert that the retaliation claim should proceed only against Casey, Hislop, Locke, O'Neil, and Capriglione.[10]  I find that the retaliation claim may also proceed against Davies, Dragon, and Grimaldi.  These three defendants allegedly directed the corrections officers to remove Reid's clothing, to mace him, and to remove his property from his cell, on October 3, 1996.  See Compl., Doc. no. 86, ¶¶ 57-59. Reid claims that the defendants had notice that he had filed suit

_____

[10] Reid and the defendants agree that Crompton, Belanger Crompton, Kench, Guimond, and Eldridge may not be held liable on this claim.  See Pl.'s Mot. in Opp'n to Defs.' Mot. for Partial Summ. J., Doc. no. 107, at 2-3.  Therefore, I grant these defendants summary judgment as to this claim.

-17-

against them and that these actions were taken in retaliation for his having filed suit. See id.

As supervisors, Davies, Dragon, and Grimaldi may be liable for their own acts. See Febus-Rodriguez, 14 F.3d at 91-92. Because they directed the corrections officers to take certain actions, there is a link between these defendants' conduct and the retaliatory acts against Reid. See id. at 92. Also the facts alleged, if true, suggest that Davies, Dragon, and Grimaldi intended to retaliate against Reid and knew that their conduct was very likely to violate Reid's First Amendment rights. See Germany, 868 F.2d at 18; see also Ferranti, 618 F.2d at 892 ("an inference of retaliation is warranted from the chronology of the events recited and from the allegation that appellant's ... suit complains of prison conditions and is directed at prison officials"). Because Davies, Dragon, and Grimaldi may be liable for retaliating against Reid, they are not entitled to summary judgment.

Walgreen and Bourgeois are entitled to summary judgment as to this claim. Reid does not allege any facts that provide a basis for finding that these defendants were personally involved in retaliating against Reid in violation of the First Amendment.

-18-

Brodeur, Cunningham, and Sokolow are also entitled to summary judgment as to this claim. Arguably Reid asserts a claim that these supervisors are liable because their inaction reaches the level of callous and reckless indifference to his constitutional rights. See Gutierrez-Rodriguez, 882 F.2d at 562-64. These defendants allegedly were on notice of Reid's allegations that the prison officials were fabricating disciplinary reports and taking other actions in retaliation for Reid's filing this suit. See Compl., Doc. no. 86, Ex. 6a, 16. Their inaction, however, does not rise to the level of reckless and callous indifference because, under the circumstances, a reasonable supervisor would not feel that his inaction was very likely to lead to a violation of Reid's First Amendment rights. See Germany, 868 F.2d at 18.

First, Reid has a "remarkable prison record for violence" and has received numerous disciplinary reports. Rep. and Recommendation, Doc. no. 29, at 6. As a result, a reasonable supervisor might suspect that Reid may have provoked the corrections officers' physical conduct that he claims was retaliatory. Second, in investigating many of the complaints, these supervisory officials learned that the corrections officers

denied Reid's allegations and they found that no violations occurred. See Compl., Doc. no. 86, Ex. 6a; Defs.' Mot. for Partial Summ. J., Doc. no. 106, Affs. of Brodeur, Cunningham, Sokolow. A reasonable supervisor would not feel the need to take any other action, aside from reviewing and investigating an inmate's complaint, if he decided that those complaints lacked merit. As Reid does not allege any facts that could provide a basis for finding that Brodeur, Cunningham, and Sokolow harbored retaliatory motivations, they are entitled to summary judgment as to this First Amendment claim. See Febus-Rodriquez, 14 F.3d at 91-92.

To conclude, the First Amendment claim may proceed against Casey, O'Neil, Hislop, Locke, Capriglione, Davies, Grimaldi, and Dragon. Defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Walgreen, Bourgeois, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to this claim.

C.    **Fourteenth Amendment Equal Protection Claim**

Reid alleges that the corrections officers beat and physically harassed him because he is black. To prevail on his claim of racial discrimination, Reid must show that the defendants injured him by intentionally subjecting him to

discrimination because he is black. See Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998). The defendants assert that this claim should proceed only as to Casey, Walgreen, and Hislop. Reid counters that this claim is actionable as to all the defendants.

Defendants Crompton, Belanger Crompton, Kench, Guimond, and Eldridge are entitled to summary judgment on this claim because Reid does not allege any facts suggesting that these defendants intentionally discriminated against him because of his race. See Judge, 160 F.3d at 75. The allegations against these defendants all focus on the fact that they did not follow certain procedures in Reid's classification proceedings and disciplinary hearings. See Compl., Doc. no. 86, ¶¶ 31, 53, 54, 55, 64-65, 68. Reid, however, does not provide any evidence indicating that these defendants were motivated by racial animosity. Because Reid fails to state a claim for racial discrimination as to defendants Crompton, Belanger Crompton, Kench, Guimond, and Eldridge, they are entitled to summary judgment as to this claim.

Corrections officers Capriglione and Locke are also entitled to summary judgment on this claim because Reid does not allege any facts suggesting that they beat or physically harassed him

because of his race. The allegations against these two corrections officers describe their conduct as retaliatory but include no indication of racial animus. See Compl., Doc. no. 86, ¶¶ 42-51, 59, 60-63, 70, 74-81. Because Reid fails to state a claim for racial discrimination as to defendants Capriglione and Locke, they are entitled to summary judgment.

The remaining defendants: Davies, Grimaldi, Dragon, O'Neil, Bourgeois, Brodeur, Cunningham, and Sokolow, are all supervisors. Therefore, they may only be held liable on the basis of their own acts or omissions and may not be liable on a theory of respondeat superior. See Febus-Rodriquez, 14 F.3d at 91-92. To proceed with his claim, Reid must demonstrate that these supervisors intended to discriminate against him because of his race when they acted or failed to act. See McPhaul v. Board of Comm'rs, 226 F.3d 558, 566 (7th Cir. 2000).

Reid does not allege facts suggesting that Davies, Grimaldi, Dragon, or O'Neil acted with discriminatory intent. As discussed earlier, their actions in directing and participating in the use of force against Reid may constitute violations of the Eighth and First Amendments. See Compl., Doc. no. 86, ¶¶ 57-59, 74-82. Without a showing of discriminatory intent, however, these

-22-

defendants are not liable for a violation of the equal protection clause. See Judge, 160 F.3d at 75. Therefore, because this claim is not actionable against Davies, Grimaldi, Dragon, and O'Neil, they are entitled to summary judgment.

Lieutenant Bourgeois allegedly witnessed Casey calling Reid a "big ape" when Reid asked Casey why he had not received his shower and his day-room privileges. Compl., Doc no. 86, ¶ 32. Bourgeois failed to report this as an offense. See id., Ex. 5. The acting warden at the time reviewed the video tape of this incident and found that the tape did not support Reid's allegations that Casey called him a "big ape."[11] Id. Bourgeois' failure to act, therefore, does not rise to the level of reckless and callous indifference to Reid's equal protection rights. See Febus-Rodriguez, 14 F.3d at 91-92. Because Bourgeois may not be held liable as a supervisor, I grant him summary judgment as to this claim.

Reid also does not allege facts suggesting that Brodeur, Cunningham, and Sokolow acted with discriminatory intent. Brodeur, Cunningham, and Sokolow had knowledge of the alleged

---

[11] The corrections officers recorded Reid's requests for day-room time and other privileges on video.

racial comments made by Hislop, Walgreen, and Casey and their alleged use of force against Reid. See Compl., Doc. no. 86, Ex. 5, 23; Defs.' Mot. for Partial Summ. J., Doc. no. 106, Brodeur Aff. These supervisors, however, addressed inmates' complaints regarding racial discrimination. In 1995, another prisoner filed a complaint with Cunningham and Brodeur stating that Walgreen was directing racial slurs at him. Compl., Doc. no. 86, Ex. 23, Vaughn Outlaw Aff. Walgreen was disciplined for this misconduct and received counseling. See id. In February 1996, Reid submitted a complaint to Commissioner Brodeur alleging that another prisoner overheard one of the corrections officers referring to a black person as a "nigger." Defs.' Mot. for Partial Summ. J., Doc. no. 106, Brodeur Aff. The Commissioner replied that if Reid could identify the particular officer that was using the "N word" he would be spoken to and sent to cultural diversity training. Id. These supervisors also investigated Reid's other complaints and found that the video tape did not support Reid's allegations that Casey called him a "big ape" and that the officers denied that Hislop called Reid "cocoa." Compl., Doc. no. 86, Ex. 5, 23. Because there is no indication that these supervisors acted with discriminatory intent, they may

-24-

not be held liable for violating Reid's equal protection rights. Therefore, they are entitled to summary judgment as to this claim.

To conclude, the Fourteenth Amendment Equal Protection claim may proceed against Casey, Walgreen, and Hislop. Defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Locke, Capriglione, Davies, Grimaldi, Dragon, O'Neil, Bourgeois, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to this claim.

## D.   **Fourteenth Amendment Due Process Claim**

Reid alleges that hearing officers Guimond, Eldridge, and Kench subjected him to a loss of good time credits in violation of his Fourteenth Amendment right to due process of law. He is suing them in their individual capacity for damages, claiming that they denied him his right to present witnesses at various disciplinary hearings. See Compl, Doc. no. 86, ¶¶ 54, 64-65, 68.

Reid is barred from litigating this procedural due process claim. See Heck, 512 U.S. at 486-87; see also Edwards v. Balisok, 520 U.S. 641, 646-47 (1997). I must dismiss a state inmate's § 1983 claim for damages that challenges the disciplinary procedures which deprived him of good time credits

-25-

if, "'a judgment in favor of the plaintiff would necessarily imply the invalidity of his ... sentence,' unless the prisoner can demonstrate that the ... sentence has been previously invalidated." Edwards, 520 U.S. at 643 (quoting Heck, 512 U.S. at 486-87). A § 1983 plaintiff may show that a sentence was invalidated by establishing that: (1) it was reversed on direct appeal; (2) it was adjudged invalid by a state tribunal; or (3) it was "called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487.

If Reid can prove that he was wrongfully denied the opportunity to present witness testimony, this procedural flaw would "necessarily imply the invalidity" of the deprivation of his good time credits. Edwards, 520 U.S. at 646. Courts have reinstated good time credits, without undertaking a new disciplinary hearing, where an inmate shows that he was denied the chance to present witness testimony as part of his defense. See id. at 646-47 (compiling cases). Therefore, a finding in Reid's favor would invalidate his loss of good time credits, and accordingly, shorten his confinement time. See Anyanwutaku v. Moore, 151 F.3d 1053, 1055 (D.C. Cir. 1998).

In order to proceed with this procedural due process claim,

Reid must show that the rulings depriving him of good time credits have been invalidated. See Heck, 512 U.S. at 487. There is no indication in the record that Reid's sentences in the disciplinary proceedings have been invalidated by the issuance of a writ of habeas corpus or any other action. Although Reid did petition both the state court and this Court for a writ of habeas corpus, he did not seek relief based on the alleged deprivations set forth in his amended complaint. Thus, no court has invalidated those procedures as they were applied to Reid.[12]

Because I find that Heck bars Reid from litigating his procedural due process claim, Guimond, Eldridge, and Kench are entitled to summary judgment as to this claim. See 512 U.S. at 487.

## IV. CONCLUSION

Defendants' partial motion for summary judgment, Doc. no. 106, is granted in part and denied in part.

The Eighth Amendment claim may proceed against Casey,

---

[12] This Court previously denied Reid's petition for a writ of habeas corpus, finding that the petition was untimely. See Reid v. Warden, 2000 DNH 142, 5 (June 19, 2000).

Walgreen, O'Neil, Hislop, Locke, Capriglione, Davies, Grimaldi, Dragon, and Bourgeois. Defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to this claim.

The First Amendment claim may proceed against Casey, O'Neil, Hislop, Locke, Capriglione, Davies, Grimaldi, and Dragon. Defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Walgreen, Bourgeois, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to this claim.

The Fourteenth Amendment equal protection claim may proceed against Casey, Walgreen, and Hislop. Defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Locke, Capriglione, Davies, Grimaldi, Dragon, O'Neil, Bourgeois, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to this claim.

Guimond, Eldridge, and Kench are entitled to summary judgment as to the Fourteenth Amendment procedural due process claim based on the deprivation of good time credits. Because I dismissed the other due process claims in my prior Memorandum and Order, there are no remaining procedural due process claims in this suit. See Reid v. Brodeur, 2000 DNH 022, 6.

Furthermore, as indicated above, defendants Crompton, Belanger Crompton, Kench, Guimond, Eldridge, Brodeur, Cunningham, and Sokolow are entitled to summary judgment as to all claims pending against them in this suit.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

February 14, 2001

cc:  Robert Reid, <u>pro se</u>
     Nancy Smith, Esq.